UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 08-60739-ALTONAGA/Brown

INDULGENCE YACHT CHARTERS
LTD., a foreign limited company,

    Plaintiff,

vs.

ARDELL INC., a Florida corporation, *et al.*,

    Defendants.
_____/

## ORDER ON MOTION TO DISMISS

**THIS CAUSE** came before the Court upon Defendants, Ardell Yacht Brokers, Inc. ("Ardell") and Michael Sharpe's ("Sharpe['s]") Motion to Dismiss Counts I, II, III, & VI of Plaintiff's Complaint [D.E. 10], filed on June 19, 2008. On May 16, 2008, Plaintiff, Indulgence Yacht Charters, Ltd. ("IYC"), filed a six-count Complaint [D.E. 1] against Ardell, Sharpe, Malcolm Elliott, and P&S Yacht Services, Inc. for damages related to the purchase and repairs of a motor vessel. Ardell and Sharpe now move to dismiss the four counts against them for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has carefully considered the Motion, pertinent portions of the record, and applicable law.

### I. BACKGROUND

This action arises out of alleged damages to a 1998 Mangusta 86-foot Motor Yacht (the "Yacht") which IYC purchased using the services of Ardell and Sharpe. (*See Compl.* at ¶¶ 1, 11, 25). The Yacht was sold pursuant to a Purchase Agreement ("Agreement") prepared on a standard form provided by Ardell and executed on January 15, 2007. (*See id.* at ¶ 17, Ex. A at 1, 3). Ardell

is identified in the Agreement as both the "authorized selling broker of record" and "the exclusive agent of the Buyer." (*Id.* at ¶ 18, Ex. A at 1, 3). The Complaint alleges Ardell and Sharpe acted for the benefit of IYC and knew that IYC intended to use the Yacht for the purpose of establishing a commercial charter business in England. (*See id.* at ¶¶ 12-13). Ardell and Sharpe were advised of IYC's heavy reliance on their expertise in the yachting industry and that a condition of the sale was the Yacht's ability to be used for commercial chartering. (*See id.* at ¶¶ 14-15).

## A.  Relevant Clauses of the Purchase Agreement

Paragraph 4 of the Agreement subjects the sale of the Yacht to an inspection, marine survey and trial run by the buyer on or before February 2, 2007, all performed to the buyer's satisfaction and at the buyer's expense. (*See id.*, Ex. A at 1). The provision also states, in part, "Ardell recommends that BUYER, his agents and surveyors examine the Vessel to ensure Vessel meets BUYER'S requirements and to verify that the Vessel's specifications and/or inventory are completely acceptable to BUYER." (*Id.*). Paragraph 5 of the Agreement addresses the issue of surveyors, stating,

> BUYER hereby acknowledges that surveyors are to be selected and employed solely by BUYER. Ardell is not responsible for any errors or omissions of the surveyors, notwithstanding the fact that Ardell may have suggested names of surveyors or may have engaged surveyors on behalf of BUYER at BUYER'S request. It is understood and agreed that if names of surveyors are provided by Ardell, such names are provided solely as an accommodation and do not constitute a recommendation by, or create any liability against, Ardell.

(*Id.*, Ex. A at 1). Paragraph 6 of the Agreement requires the buyer to accept or reject the results of the trial runs and surveys in writing or by fax to Ardell by February 8, 2007. (*See id.*, Ex. A at 2).

The Agreement includes a merger clause at Paragraph 15, which states, "This document

constitutes the entire agreement between the parties and it is agreed and understood that there are no other duties, obligations, liabilities, or warranties, implied or otherwise, except as referred to in an addendum, if any, attached." (*Id.*, Ex. A at 3). Paragraph 17 states, in capital and bold lettering:

> Information concerning the vessel heretofore provided by Seller through Ardell is believed to be correct and such information is offered in good faith, but Ardell cannot guarantee the accuracy of this information or warrant the condition of the vessel. Buyer independently, and through Buyer's surveyors, agrees to verify specifications, condition or other matters pertaining to vessel.

(*Id.*). Paragraph 18 of the Agreement also states, in capital and bold lettering, that the Buyer accepts the vessel "as is and where is" and "[n]o warranty, either express or implied and no representation as to the condition of the vessel has been made by the seller or Ardell, other than those specifically set forth in this agreement." (*Id.*). Paragraph 23 of the Agreement, styled as "Other conditions," states, in relevant part, "It is necessary that the Vessel be in such condition that her MCA Small Boat Commercial Vessel Certificate can be re-instated." (*Id.*).

## B. Engagement of Malcolm Elliott

Following execution of the Agreement and on behalf of IYC, Ardell and Sharpe engaged the services of Defendant, Malcolm Elliott ("Elliott"), a marine surveyor. (*See id.* at ¶ 20). Ardell and Sharpe presented Elliott to IYC as properly credentialed to inspect, survey and value the Yacht, which was moored in Ft. Lauderdale, Florida. (*See id.*). Elliott completed two inspections of the Yacht prior to the completion of the sale: one while the Yacht was in the water on or about January 25, 2007, upon which Elliott concluded the Yacht was an "acceptable marine risk" and valued the vessel at approximately $2 million (*id.* at ¶ 21); and a second, dry-dock inspection in March 2007 upon which he reported cosmetic deficiencies to the hull that could be easily remedied (*see id.* at ¶¶

CASE NO. 08-60739-ALTONAGA/Brown

22-23). Following the inspections, Sharpe represented to IYC that the Yacht was in "superior condition." (*Id.* at ¶ 24). IYC therefore remitted the balance of the purchase price due under the Agreement on March 21, 2007. (*See id.* at ¶ 25).

Upon completion of the sale, Sharpe advised IYC that he would, individually and for separate payment, oversee repairs to the Yacht, including the blistering of the hull. (*See id.* at ¶ 26). IYC executed a limited power of attorney in favor of Sharpe on or about March 22, 2007. (*See id.* at ¶ 49). IYC remitted $10,000.00 directly to Sharpe on or about March 23, 2007, to be used for the repairs. (*See id.* at ¶ 27). On April 2, 2007, Sharpe sought and received an additional $60,000.00 in his name from an escrow account held by Ardell. (*See id.* at ¶ 30).

In March 2007, Sharpe hired Defendant, P&S Yacht Services, Inc. ("P&S"), to perform the repairs. (*See id.* at ¶ 29). Elliott conducted a subsequent inspection and issued a report on May 15, 2007, finding that the repairs "had been performed at a high standard and the hull area to be in good structural condition." (*Id.* at ¶¶ 28-29, 31-32). Sharpe reported to IYC that the blistering had been repaired, the Yacht was ready for commercial chartering, and it was available for transport to IYC's chosen destination. (*See id.* at ¶ 33). The Complaint avers the Yacht was subsequently inspected at a facility outside the United States in February 2008, whereupon it was determined that the hull blistering was not properly repaired and the hull showed signs of osmosis, a condition that affects its structural integrity and renders it unsuitable for use as a commercial vessel. (*See id.* at ¶ 35).

**C.    IYC's Complaint**

IYC filed the instant action against Ardell, Sharpe, Elliott and P&S alleging the following claims: breach of contract against Ardell (Count I), negligent misrepresentation against Ardell and

Sharpe (Count II), negligence against Ardell and Sharpe (Count III), negligence against Elliott (Count IV), negligence against P&S (Count V), and deceptive and unfair trade practices against Ardell and Sharpe (Count VI).

Count I alleges that Ardell breached the Agreement when it failed to provide a vessel suitable for commercial use as required by Paragraph 23. (*See id.* at ¶¶ 40-42). Count II alleges that Ardell and Sharpe breached a duty to provide IYC with a vessel worthy of commercial use by (1) negligently misrepresenting that the Yacht did not have osmosis; (2) negligently misrepresenting that Elliott had the requisite credentials to inspect and survey the Yacht; (3) endorsing the conclusions of Elliott's first and second surveys as to the condition of the Yacht; (4) negligently misrepresenting the Yacht was in very good condition; and (5) failing to provide IYC with a Yacht eligible to receive commercial certification. (*See id.* at ¶¶ 45-46). Count III alleges that Ardell and Sharpe breached their duty to IYC to exercise reasonable care to obtain and supervise the repairs to the Yacht by committing one or more negligent acts including: (1) negligently hiring P&S to perform repairs; (2) negligently supervising repair work; (3) negligently failing to advise IYC of the defective condition of the Yacht; and (4) negligently representing that Elliott had the proper credentials to perform a survey of a commercial vessel. (*See id.* at ¶¶ 52-54). Count VI alleges that Ardell misrepresented the condition of the Yacht, its suitability for commercial chartering, its actual value, the cost of necessary repairs, and Elliott's credentials, all in violation of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"), Fla. Stat. § 501.201, *et seq.* Ardell and Sharp move to dismiss these four counts on the ground that IYC has failed to state a claim upon which relief can be granted.

CASE NO. 08-60739-ALTONAGA/Brown

## II. STANDARD OF REVIEW

A motion to dismiss a complaint for failure to state a claim requires that a court accept the facts pleaded as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness*, 711 F.2d 989, 994-95 (11th Cir. 1983). "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests . . . .'" *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Nevertheless, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[,] . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Twombly*, 127 S. Ct. at 1964-65 (citations omitted). "[A] complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 974 (11th Cir. 2008) (quoting *Twombly*, 127 S. Ct. at 1965). However, the threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is low. *See Quality Foods de Centro Am.*, 711 F.2d at 995.

## III. ANALYSIS

### A.     Breach of Contract Claim Against Ardell

Ardell argues that the Agreement, attached as an exhibit to the Complaint, wholly contradicts the factual allegations supporting IYC's breach of contract claim in Count I. A copy of a written instrument included as an exhibit to a pleading is a part of the pleading for all purposes, including

6

CASE NO. 08-60739-ALTONAGA/Brown

a Rule 12(b)(6) motion to dismiss. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dept. of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985). "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007). Thus, while courts accept the facts in a complaint as true in considering a motion to dismiss, they can be trumped by contradictory facts presented in an exhibit or attachment to the pleading. *See id.*

While Ardell directs the Court's attention to several paragraphs of the Agreement, it does little to specifically explain how these provisions contradict the allegation that Ardell breached the Agreement. Ardell primarily relies on Paragraphs 17 and 18 which provide, respectively, that the Buyer, "[i]ndependently and through Buyer's surveyors, agrees to verify specifications, condition or other matters pertaining to vessel" and "[t]he vessel is sold to the buyer and accepted by the buyer as is and where is." (*Compl.*, Ex. A at 3). Ardell's argument, however, ignores the exception contained in Paragraph 18: "[n]o warranty . . . and no representation as to the condition of the vessel has been made by . . . Ardell, *other than those specifically set forth in this agreement.*" (*Id.* (emphasis added)). Paragraph 23 sets forth the specific condition that the Yacht be suitable for commercial use, the condition explicitly excluded from the general release of Paragraph 18. This is the clause IYC alleges Ardell breached, and Ardell fails to demonstrate how IYC's claim is in conflict with the terms of the Agreement.[1] The remaining clauses Ardell briefly cites as contradictory, Paragraphs 4, 5, 6, and 15, in no way release Ardell from this condition.

---

[1] In its Reply, Ardell points to its limited role as a broker under Paragraph 21 of the Agreement. (*See* Reply [D.E. 31] at 2). Resolution of any such assertion requires the development of a factual record making it inappropriate for a Rule 12(b)(6) motion.

7

CASE NO. 08-60739-ALTONAGA/Brown

To the extent the Agreement can be considered ambiguous with respect to Ardell's liability, the Complaint does not directly contradict the Agreement. In construing contracts, Florida courts apply the rule that a specific clause takes precedence over more general ones, and "'where there are general and specific provisions in a contract relating to the same thing, the special provisions will govern in its construction over matters stated in general terms." *Raines v. Palm Beach Leisureville Cmty. Ass'n*, 317 So.2d 814, 817 (Fla. 4th DCA 1975) (quoting *Aetna Life Ins. Co. v. White*, 242 So.2d 771, 773 (Fla. 4th DCA 1970)); *see also Volusia County v. Aberdeen at Ormond Beach, L.P.*, 760 So.2d 126, 133 (Fla. 2000). This rule does not apply, however, where there is no ambiguity in the contract. *See Mulhern v. Rogers*, 636 F. Supp. 323, 325 (S.D. Fla. 1986) (citing *Pottsburg Utils., Inc. v. Daugharty*, 309 So.2d 199 (Fla. 1st DCA 1975)). Despite general releases from liability, the more specific clauses imposing special conditions govern, and the Agreement therefore does not contradict the allegations of Complaint. Dismissal of the breach of contract claim is inappropriate.

**B.     Economic Loss Rule**

Ardell and Sharpe argue that IYC's tort claims (Counts II and III) are barred by the Florida economic loss rule. The economic loss rule limits tort claims that stem from contractual arrangements. *See Fla. Power & Light Co. v. Westinghouse Elec. Corp.*, 510 So.2d 899 (Fla. 1987). "[T]he economic loss rule has been applied in two different circumstances. The first is when the parties are in contractual privity and one party seeks to recover damages in tort for matters arising from the contract. The second is when there is a defect in a product that causes damage to the product but causes no personal injury or damage to other property." *Indem. Ins. Co. v. Am. Aviation,*

8

*Inc.*, 891 So.2d 532, 536 (Fla. 2004). As this is not a products liability suit, only the first circumstance may apply.

IYC alleges it engaged Sharpe's services through a limited power of attorney for the purpose of conducting repairs to the Yacht following the completed purchase. (*See* Resp. [D.E. 19] at 8; *Compl.* at ¶ 26). IYC also alleges that Sharpe sought monies for the repairs from Ardell, monies that were released to Sharpe from Ardell's escrow account. (*See Compl.* at ¶ 46). These facts suggest that a relationship between Ardell, Sharpe, and IYC may have existed that was not governed by the four corners of the Agreement. As the court in *Indemnity Insurance* clarified, "cases that do not fall into either of the two categories articulated above should be decided on traditional negligence principles of duty, breach, and proximate cause." *Id.* at 543. In the instant case, as in *Indemnity Insurance*, the economic loss rule cannot be extended to bar tort claims against Ardell and Sharpe which arise from actions alleged to have occurred outside of the scope of the Agreement.

Further, Rule 8(d)(2), Fed. R. Civ. P., allows parties to "set out two or more statements of a claim . . . alternatively or hypothetically, either in a single count . . . or in separate ones." In that same vein, "[a] party may state as many separate claims . . . as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). IYC may plead that Ardell and Sharpe's actions are governed by a contract in one claim and simultaneously assert that no contract governs in other claims. Because of the economic loss rule, however, the tort claims may ultimately be subject to dismissal if and when Ardell and Sharpe's actions are shown to be part and parcel of duties imposed by a contract to which Ardell, Sharpe and IYC are parties. *See Weathers-Mathers v. McGuire*, 616 So.2d 1187 (Fla. 4th DCA 1993) (reversing dismissal where breach of contract and negligent misrepresentation claims

CASE NO. 08-60739-ALTONAGA/Brown

were both pled, while recognizing plaintiff could not prevail on both claims). Until that evidence is presented, however, IYC may plead in the alternative.

C.   **Negligent Misrepresentation Claim Against Ardell and Sharpe**

Ardell and Sharpe further argue that IYC fails to allege all of the elements required for a negligent misrepresentation claim in Count II. In order to recover for negligent misrepresentation, the Complaint must show: (1) the defendant made a statement concerning a material fact defendant believed to be true but which was in fact false; (2) the defendant was negligent in making the statement because defendant should have known the statement was false; (3) in making the statement, the defendant intended or expected that another would rely on the statement; (4) the claimant justifiably relied on the false statement; and (5) the claimant suffered loss, injury or damage as a result. *See Standard Jury Instructions–Civil Cases (No. 99-2)*, 777 So.2d 378, 381 (Fla. 2000); *Fla. Women's Med. Clinic, Inc. v. Sultan*, 656 So.2d 931, 933 (Fla. 4th DCA 1995); *Baggett v. Electricians Local 915 Credit Union*, 620 So.2d 784, 786 (Fla. 2d DCA 1993).

Ardell and Sharpe claim the IYC does not allege the second element, that they knew or should have known the Yacht had osmosis and was not in very good condition prior to purchase. IYC alleges that Ardell and Sharpe are in the business of brokering the sales and purchases of yachts and as part of that business, brokered and acted as agents for IYC in the purchase of the Yacht. (*See Compl.* at ¶¶ 11-19). IYC further avers that it relied upon Ardell and Sharpe's expertise in the yachting business (*see id.* at ¶¶ 14; 26), and that Ardell and Sharpe personally supervised the Yacht repairs (*see id.* at ¶¶ 26, 33). Sufficient facts are pled that Ardell and Sharpe knew or should have

known the condition of the Yacht prior to the purchase. Ardell and Sharpe's assertions regarding when the osmosis developed are factual issues saved for the jury.

**D.      Deceptive and Unfair Trade Practices**

Ardell and Sharpe move to dismiss Count VI of the Complaint which alleges deceptive and unfair trade practices. IYC identifies five verbal or written misrepresentations made by Ardell and Sharpe that allegedly violate the FDUTPA. The FDUTPA is designed to protect consumers from "unconscionable, deceptive, or unfair acts or practices" of trade and commerce. Fla. Stat. § 501.202(2). The FDUTPA declares unlawful any "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts of practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

Ardell and Sharpe argue that IYC's reliance on their verbal or written representations was unreasonable because those representations contradict the express terms of the Agreement. Where a plaintiff relies on oral statements at variance with written documents he or she has signed, the plaintiff's reliance is not reasonable as a matter of law. *See Garcia v. Santa Maria Resort, Inc.*, 528 F. Supp. 2d 1283, 1295 (S.D. Fla. 2007); *Zlotnick v. Premier Sales Group, Inc.*, 431 F. Supp. 2d 1290, 1295 (S.D. Fla. 2006); *Rosa v. Amoco Oil Co.*, 262 F. Supp. 2d 1364, 1368 (S.D. Fla. 2003) ("A party has no right to rely upon alleged oral misrepresentations that are adequately covered and expressly contradicted in a later written contract.") (citations omitted). Courts routinely dismiss FDUTPA claims where those claims are directly and fully rebutted by express evidence in a governing written contract. *See Garcia*, 528 F. Supp. 2d at 1296; *Zlotnick*, 431 F. Supp. 2d at 1295; *Rosa*, 262 F. Supp. 2d at 1368-69. In *Zlotnick*, for example, the court dismissed a FDUTPA claim

involving the seller's cancellation of a real estate reservation agreement where the terms of that written agreement expressly allowed the seller to cancel without penalty. *See* 431 F. Supp. 2d at 1296. *Cf. Fendrich v. RBF, LLC.*, 842 So.2d 1076 (Fla. 4th DCA 2003) (holding purchaser's FDUTPA claim viable where reservation agreement unequivocally permitted consumer an opportunity to purchase lot).

As IYC points out in its Response, the cases relied upon by Ardell and Sharpe are distinguishable because the claims in those cases were directly and expressly rebutted by the contracts. As discussed, despite the general release from liability in Paragraph 18, Paragraph 23 specifically requires that "the Vessel be in such condition that her MCA Small Boat Commercial Vessel Certificate can be re-instated." (*Compl.*, Ex. A at 3). The alleged misrepresentations regarding the condition of the Yacht and its suitability for commercial chartering do not contradict the terms of the Agreement. Further, the remaining misrepresentations, specifically regarding Elliott's credentials as a surveyor and the post-sale repairs performed by Sharpe, concern issues outside the scope of the Agreement. IYC has stated sufficient facts to support a claim pursuant to the FDUTPA.

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that the Motion to Dismiss Counts I, II, III, & VI of Plaintiff's Complaint **[D.E. 10]** is **DENIED**.

CASE NO. 08-60739-ALTONAGA/Brown

**DONE AND ORDERED** in Chambers at Miami, Florida, this 16th day of September, 2008.

*Cecilia M. Altonaga*
_____
**CECILIA M. ALTONAGA
UNITED STATES DISTRICT JUDGE**

Copies provided to:
Counsel of record